DECISION
Defendant, Department of Environmental Management, (hereinafter DEM), and the Attorney General, under Rule 30 of the Rules of Civil Procedure, seek protective orders barring Woodland Manor III Associates, (hereinafter "Plaintiff"), from deposing or otherwise seeking discovery of Defendant's former attorney, Genevieve Martin, and the executive director of DEPCO, John McJennette.
The pertinent facts in this case are as follows. Plaintiff is a partnership which owns a parcel of land in Coventry. Plaintiff filed suit in 1989 alleging that the Defendant, DEM, in 1986 wrongfully required Plaintiff's predecessor in interest to undergo a formal wetlands application process before it would be allowed to develop the property.
A bench trial was held in July of 1993. In February 1994, this Court issued a decision finding that the Defendant DEM was estopped from asserting jurisdiction over the property beyond that claimed by the then Department of Natural Resources in a 1974 letter to Plaintiff's predecessor. This Court further determined that Plaintiff may pursue a "takings" claim with respect to Defendant's conduct. Discovery has been ongoing in that regard.
On February 22, 1995, Plaintiff's counsel deposed DEM's Chief of the Division of Freshwater Wetlands, Mr. Dean Albro. At that time Mr. Albro testified that in the Fall of 1994, Genevieve Martin, former counsel for Defendant, had discussions with the Attorney General's office with respect to this litigation, as well as proceedings involving DEPCO, which is the subject of a separate lawsuit in which some of Plaintiff's principals are defendants. (the Woodland I litigation). Plaintiff alleges that Ms. Martin contacted the Attorney General and DEPCO in an effort to interfere with "sensitive negotiations" between DEPCO and Plaintiff. Plaintiff served a notice of deposition upon Ms. Martin, and later Mr. McJennette. The Defendant and the Attorney General filed the above-mentioned motions.
Discussion
Rule 26(B) (1) of the Superior Court Rules of Civil Procedure discusses the scope of examination of a deposition. It provides, in pertinent part, that:
 Unless otherwise ordered by the court as provided by Rule 30(b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party . . .
The Defendant notes that Plaintiff seeks to depose Ms. Martin regarding communications she had in 1994 "relative to DEPCO's settlement of the WOODLAND I litigation" and argues that such is irrelevant to the within matter where the claims asserted in Plaintiff's amended complaint all relate to conduct of officials of DEM in 1986. The Attorney General argues that Plaintiff is attempting to use the civil discovery process in this case to gather privileged information concerning interagency communications and the circumstances surrounding the commencement of a Grand Jury investigation regarding representations made to DEPCO relative to the WOODLAND I litigation. Plaintiff notes that Defendant has asserted "good faith immunity" as an affirmative defense and argues that the information sought is relevant in that it is evidence of a continuing pattern of wrongful conduct by DEM.
Although nothing in the Rules of Civil Procedure exempts a party's attorney from being subject to a deposition and, in general, protective orders totally prohibiting a deposition should rarely be granted, a request to depose a party's attorney "constitutes a circumstance justifying departure from the normal rule." N.F.A. Corp. v. River View Narrow Fabrics, Inc., 117 FRD 83, 84 (M.D.N.C. 1987). "In addition to disrupting the adversarial system, such depositions have a tendency to lower the standards of the profession, unduly add to the cost and time spent in litigation, personally burden the attorney in question, and create a chilling effect between the attorney and client."Id. at 85. In Southern Film Extruders, Inc. v. COCA-COLA Co.,
117 FRD 559 (M.D.N.C. 1987), where a defendant sought to depose the plaintiff's former attorney, the Court noted that much of the rationale in N.F.A. Corp. (supra) would still be appropriate, and held that the deposing party had to show "both the propriety and the need for the deposition." Id. at 561. Again inHarriston v. Chicago Tribute, 134 FRD 232, 233 (N.D. Ill. 1990), the Court discussed depositions of a party's attorney holding that "[d]eposition of opposing counsel should be limited to situations where it is shown that: 1) no other means exist to obtain the information than to depose opposing counsel; 2) the information sought is relevant and nonprivileged; and 3) the information is crucial to the preparation of the case." Finally, and most importantly, the United States Supreme Court has stated that "[i]n deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Oppenheimer Fund, Inc. v.Sanders, 437 U.S. 340, 352 n. 17, 98 S.Ct. 2370, 2390, 57 L.Ed.2d 253, 266 (1978).
In the instant matter, Plaintiff has failed to show that the information sought is relevant to its case. Plaintiff actually admits such in its memorandum in support of its objection to Defendant's motion stating that "Ms. Martin's conversations with the Attorney General and/or DEPCO cannot by any cogent explanation relate to questions or issues Ms. Martin faced in the DEM litigation." (Plaintiff's Memo at 9). Plaintiff's argument that the deposition will reveal relevant information in connection with Defendant's "good faith immunity" defense is also unavailing. The success or failure of that affirmative defense will center on the actions taken by DEM in 1986 in denying Plaintiff a wetland permit. What this Court can reasonably infer is that Plaintiff's purpose in seeking to depose Ms. Martin is to gather information relative to the previously mentioned "WOODLAND I" litigation and the pending Grand Jury investigation. Accordingly, Defendant's motion seeking a protective order barring Plaintiff from deposing Ms. Martin is granted.
On April 25, 1995, Plaintiff scheduled the deposition of John McJennette. The Attorney General filed a motion to quash or, in the alternative, for a protective order. In support of its motion, the Attorney General "incorporates" the same arguments advanced in support of its motion to quash the Martin deposition.
The concerns regarding the Martin deposition do not apply to the deposition of McJennette, as McJennette is not a former attorney for Defendant. As a general rule, the purpose of discovery is for parties to obtain the fullest possible knowledge of the issues and facts before trial. Grinnell Corp. v.Hackett, 70 FRD 326 (D.R.I. 1976). DEM deposed the Keeper of Records of DEPCO in September of 1994. Accordingly, Plaintiff should now be allowed similar discovery opportunity in this matter.
The Attorney General's broad and conclusory allegation that the deliberative process and law enforcement privileges apply to this case is also without merit. The deliberative process privilege focuses on advisory opinions, recommendations, and deliberations constituting a part of a process by which governmental decisions and policies are formulated. The privilege does not extend to purely factual materials. Resolution TrustCorporation v. Diamond, 137 FRD 634, 640 (S.D. N Y 1991). In evoking the deliberative process privilege, an agency must provide "precise and certain" reasons for preserving the confidentiality of the information and the said privilege must specifically describe the information that is purportedly privileged. Id. at 641. In this case, only general policy reasons were advanced in support of the privilege claim, and no attempt to specifically describe the privileged information was made.
The purpose of the law enforcement privilege is to prevent the disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and to prevent interference with an investigation. In re: Dept. ofInvestigation of City of New York, 856 F.2d 481, 484 (2nd Cir. 1988). How this privilege would apply to the deposition of Mr. McJennette is unclear. Should Plaintiff inquire into the ongoing Grand Jury investigation or any thought process that led McJennette to communicate with other agencies, the defendant could at that time invoke the applicable privilege. Accordingly, the deposition of Mr. McJennette shall go forward, and the Attorney General's motion is denied.
Counsel shall submit the appropriate order for entry.